SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
PETER H. KLEE, Cal. Bar No. 111707
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone:  619.338.6500
Facsimile:   619.234.3815
E mail       pklee@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MADALYN A. MACARR, Cal. Bar No. 301539
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398
E mail:       mmacarr@sheppardmullin.com

Attorneys for Defendant Allstate
Indemnity Company

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| JUAN RIVERA, an individual; ANA RIVERA, an individual; and JOANNA RIVERA, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> ALLSTATE INDEMNITY COMPANY and DOES 1-20, inclusive, <br><br> Defendants. | Case No. 5:20−cv−01860 MCS (KKx) <br><br> The Hon. Mark C. Scarsi <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ALLSTATE INDEMNITY COMPANY'S MOTION FOR SUMMARY JUDGMENT** <br><br> [*Notice of Motion and Motion, Declarations of Madalyn Macarr and Katherine Burris, Compendium of Evidence, and Separate Statement of Undisputed Facts filed concurrently herewith, [Proposed] Order lodged concurrently herewith*] <br><br> Date:      October 25, 2021 <br> Time:     9:00 a.m. <br> Ctrm:     7C <br><br> Discovery Cut-off:     August 6, 2021 <br> Pretrial Conf. Date:   TBD <br> Trial Date:               TBD |

SMRH:4822-5147-7195.2

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................... 1

II. STATEMENT OF UNDISPUTED FACTS ........................................... 3

A. Plaintiffs' February 7, 2014 Accident and Resulting UM Claim ........... 3

B. Plaintiffs' Allstate Policy .................................................................. 4

1. Plaintiffs' Policy requires physical contact with an uninsured automobile to trigger UM coverage. ........................... 4

2. Plaintiffs' Policy voids coverage if the insured makes a material misrepresentation. ................................................. 5

C. Allstate Investigates Plaintiffs' UM Claim ....................................... 5

D. Plaintiffs Fail to Return Requested Medical and Wage Authorization Forms ....................................................................... 7

E. Allstate Denies Plaintiffs' UM Claim For the First Time ................... 7

F. Plaintiffs Revive Their UM Claim .................................................... 7

G. Allstate Continues to Investigate the Matter ..................................... 8

1. Allstate Conducts Written Discovery ........................................ 8

2. Allstate Takes Plaintiffs' Examinations Under Oath ................. 8

H. Allstate Again Denies the Claim ...................................................... 9

III. THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF ALLSTATE ON PLAINTIFFS' COMPLAINT ..................... 9

A. Plaintiffs Are Not Entitled to UM Benefits Under the Policy Because There Was No Physical Contact With an Uninsured Auto ............................................................................................... 9

1. To Trigger UM Coverage, the Accident Must Involve Physical Contact With an Uninsured Automobile. .................. 10

2. Plaintiffs Did Not Come Into Physical Contact With an Uninsured Auto – Or With Any Moving Object ...................... 11

a. Police Report ................................................................. 11

b. Independent Witness Statement ...................................... 11

c. Plaintiffs' Discovery Responses ..................................... 12

d. Examinations Under Oath .............................................. 12

-i-

         3.     The Accident Was Not a Covered UM Loss Because There Was No Physical Contact With An Uninsured Auto ....... 12

   B.    Plaintiffs' Material Misrepresentations Bar Their Recovery ................ 13

         1.     Proof of a Knowing Material Misrepresentation is a Complete Defense to Liability ..................................................... 13

         2.     Plaintiffs Knowingly Made Material Misrepresentations ......... 14

   C.    Plaintiffs' Failure to Return Allstate's Requested Medical and Wage Authorization Forms Precludes Recovery of Policy Benefits ............................................................................................. 15

IV.   CONCLUSION ............................................................................................. 16

SMRH:4822-5147-7195.2

Case No. 5:20-cv-01860 DOC (KKx)
DEFENDANT ALLSTATE INDEMNITY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Aydin Corp. v. First State Ins. Co.*
  18 Cal. 4th 1183 (1998)...........................................................................2, 11

*Barnes v. Nationwide Mutual Ins. Co.*
  186 Cal. App. 3d 541 (1986).............................................................10, 13, 14

*Cummings v. Fire Ins Exch.*
  202 Cal. App. 3d 1407 (1988).......................................................3, 13, 14, 15

*Fine v. Bellefonte Underwriters Ins. Co.*
  725 F. 2d 179 (2nd Cir. 1984) ....................................................................14

*Hodjat v. State Farm Mut. Auto. Ins. Co.*
  211 Cal. App. 4th 1 (2012) .........................................................................14

*Long v. Ins. Co. of N. Am.*
  670 F.2d 930 (10th Cir. 1982) ....................................................................14

*Morris v. Allstate Ins. Co.*
  16 F. Supp. 3d 1095 (C.D. Cal. 2014)...........................................................14

*Myers v. Allstate*
  109 F. Supp. 3d 1331 (C.D. Cal. 2015)..........................................................16

*Onyon v. Truck Ins. Exch.*
  859 F. Supp. 1338 (W.D. Wash. 1994) ..........................................................13

*Orpustan v. State Farm Mut. Auto. Ins. Co.*
  7 Cal. 3d 988 (1972) .................................................................................10

*Ram v. Infinity Select Ins.*
  807 F. Supp. 2d 843 (N.D. Cal. 2011)............................................................14

*State Farm Mutual Auto Ins. Co. v. Yang*
  35 Cal. App. 4th 563 (1995)........................................................................10

*Travelers Cas. & Sur. Co. v. Superior Court*
  63 Cal. App. 4th 1440 (1998).........................................................................9

*United States v. Payne*
    944 F.2d 1458 (9th Cir. 1991) ................................................................. 6

<u>Statutes</u>

Cal. Ins. Code § 11580.2(b) ......................................................... 5, 9, 10, 14

Cal. Ins. Code § 11580.2(o) ............................................................ 3, 15, 16

SMRH:4822-5147-7195.2

Case No. 5:20-cv-01860 DOC (KKx)
DEFENDANT ALLSTATE INDEMNITY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

# I.   __INTRODUCTION__

The facts are simple and not in dispute.  Plaintiffs Juan Rivera ("Mr. Rivera"), Ana Rivera ("Mrs. Rivera") and their daughter Joanna Rivera ("Joanna") (collectively "Plaintiffs") crashed the car they were riding in on February 7, 2014. Mr. Rivera was driving the car when he noticed a tire sitting in the middle of their lane.  Mr. Rivera did not have time to avoid running over the tire, hit it, and ultimately collided into a metal guardrail and concrete wall on the side of the highway.  To be sure, Plaintiffs' accident was a serious one, and they each sustained injuries of varying degrees.

Shortly after the accident, Plaintiffs made a claim for uninsured motorist ("UM") benefits to defendant Allstate Indemnity Company ("Allstate") pursuant to their automobile policy (the "Policy").  Allstate investigated the claim by, among other things, requesting and reviewing a copy of the traffic collision report prepared by the California Highway Patrol and by engaging a private investigation firm to interview the only known eyewitness to the accident.  Allstate's investigation revealed that the loss was not covered under the plain terms of the Policy's UM provision because there was (and still is) no evidence that Plaintiffs came into contact with an uninsured automobile in connection with the accident.  Indeed, it is undisputed that there was no physical contact between Plaintiffs' car and any uninsured vehicle.  (Undisputed Fact ("UF") No. 31).  Accordingly, Allstate correctly denied Plaintiffs' claim on August 21, 2014.

In February 2016, Plaintiffs reappeared, reiterating their request for policy benefits and demanding UM arbitration.  Allstate agreed to further investigate the matter.  Allstate took each of Plaintiff's examinations under oath ("EUOs") and propounded written discovery to each of them.  Allstate's continued investigation – including each Plaintiff's testimony at his or her respective EUO and verified discovery responses – only confirmed Allstate's prior conclusion: the accident did not involve an uninsured vehicle and so was not covered as a UM loss under the

1  Policy.  Allstate communicated its denial of Plaintiffs' claim for the second time on

2  January 11, 2017.  Despite the fact that their loss was not covered, Plaintiffs have

3  now sued Allstate for declaratory relief, seeking a declaration that they are entitled

4  to uninsured motorist (UM) benefits arising from the accident.[1]

5      Plaintiffs' entire complaint is untenable because Plaintiffs were not and are

6  not entitled to UM policy benefits for the following independent reasons:

7      <u>First</u>, the Policy requires that, to be a covered UM loss, the accident must

8  "arise out of the ownership, maintenance or use of an uninsured auto."  (UF No. 5).

9  In other words, there must actually be another vehicle – an uninsured auto –

10  involved in the accident.  Here, the undisputed evidence shows that there was no

11  other vehicle – insured or uninsured – involved in the accident.  Rather, according to

12  Mr. Rivera's own EUO testimony, the stationary and motionless tire was sitting on

13  its side in the middle of his lane as he approached it.  Mr. Rivera also admitted that

14  there were no cars for at least a quarter mile in front of him, and insists he has no

15  idea where the tire came from.  (ECF No. 28-4, ¶ 3). Mr. Rivera's verified discovery

16  responses, as well as Mrs. Rivera's and Joanna's EOU testimony and verified

17  discovery responses, confirm this version of events.  As the tire was admittedly

18  sitting dormant in Plaintiffs' lane of travel, Allstate correctly denied Plaintiffs' claim

19  for UM benefits as not being a covered UM loss under the terms of the Policy.

20  _____

21  [1]  Plaintiffs included a claim for breach of the implied covenant of good faith and

22      fair dealing (the "bad faith claim") in the Complaint.  However, they have since
        agreed, both orally and in writing, to voluntarily dismiss that claim and

23      accompanying request for punitive damages.  (Macarr Declaration, ¶ 28, Ex. 32);
        *see also* ECF No. 28 at p. 7 (conceding that Plaintiffs "agree that if the court

24      finds that there is no physical contact then no bad faith.  Same goes for the other
        causes of action.  Additionally, Plaintiff concedes that the bad faith is [statute of

25      limitations] barred and will dismiss that cause of action….Thus, the issue is moot

26      as well as the punitive damages.").  Accordingly, Plaintiffs' sole remaining claim
        is their request for declaratory relief.  Nevertheless, Allstate reserves all of its

27      rights with respect to Plaintiffs' bad faith claim should they attempt to renege on

28      their agreement and representations to the Court and counsel.

<u>Second</u>, the Complaint fails because the Policy excludes coverage where an insured misrepresents material facts.  Mr. Rivera initially reported to Allstate that the tire came off an unidentified truck when the truck went out of control.  Mr. Rivera also initially claimed that other drivers hit the tire as well.  But Mr. Rivera's statements to the police at the scene of the accident that "out of nowhere a full size tire was in the middle of his lane" contradicted these initial statements to Allstate.  An eyewitness to the accident also told police "there were no other vehicles around V-1 [Plaintiffs' vehicle]," a recollection consistent with what the eyewitness later told Allstate's investigator.  And, each Plaintiff testified unequivocally at his or her EUO that the tire was lying flat in their lane as they approached it and admitted in their verified discovery responses that the accident occurred "due to a full size tire left in the middle of the[ir] lane."  In other words, there admittedly was no other car involved in Plaintiffs' accident.  Mr. Rivera's false representation of fact was no doubt material, as the involvement of the unknown truck could trigger UM coverage, and in fact caused Allstate to initially conclude that UM coverage applied.  Thus, any potential coverage was voided by Plaintiffs' material misrepresentations. *Cummings v. Fire Ins Exch.*, 202 Cal. App. 3d 1407, 1417-19 (1988).

<u>Third</u>, Plaintiffs' admitted failure to return Allstate's requested medical and wage authorization forms precludes any recovery.  *See* Insurance Code § 11580.2(o) (requiring an insured to provide medical and wage authorizations, and staying all proceedings, and entitlement to policy benefits, until 30 days after that requirement is met).

## II.  STATEMENT OF UNDISPUTED FACTS

### A.  Plaintiffs' February 7, 2014 Accident and Resulting UM Claim

On February 7, 2014, Mr. Rivera was driving Plaintiffs' 2008 Nissan Titan automobile traveling northbound on the Interstate 15 freeway north of SR-138.  (UF No. 7).  Mrs. Rivera and Joanna were riding as passengers in the vehicle at the time of the accident.  (UF No. 8).  While Mr. Rivera was driving, he noticed that "a fully

size tire with the rim was in the middle of their lane." (UF No. 9). Mr. Rivera did not have an opportunity to avoid running over the motionless tire, lost control of the vehicle after he hit it, and "veered sharp to the right and collied [sic] into a metal guardrail and the concrete wall." (UF No. 10). In other words, no other vehicle – insured or uninsured – was involved in the accident.

The police reported to the scene of the accident and prepared a traffic collision report (the "Police Report") which, among other things, identified one eyewitness to the accident. (UF Nos. 11, 24).

Plaintiffs submitted a claim for UM benefits to Allstate on March 24, 2014. (UF No. 12). Although Plaintiffs did not indicate in their March 24, 2014 initial demand the actual amount of UM benefits they were seeking, they demanded uninsured motorist arbitration the same day. (UF No. 13).

### B.   Plaintiffs' Allstate Policy

At the time of their accident, Plaintiffs were insured under an Allstate automobile policy with limits of $25,000 per person and $50,000 per accident for UM bodily injury coverage. (UF Nos. 1, 2).

          1.   <u>Plaintiffs' Policy requires physical contact with an uninsured automobile to trigger UM coverage.</u>

Plaintiffs' Policy provides that, to be covered under the UM provision, "Bodily injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto." (UF No. 3).

The Policy included the following language regarding hit-and-run accidents:

> **We** will pay those damages that an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of:
>
> 1. **bodily injury** sustained by an insured person, and **property damage**…
>
> The **bodily injury** or **property damage** must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto.

-4-

Case No. 5:20-cv-01860 DOC (KKx)
DEFENDANT ALLSTATE INDEMNITY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

An uninsured auto is:

> 3.   a hit-and-run **motor vehicle** which causes:
>
>> a)   **bodily injury** to an insured person by *physical contact with the insured person or with a vehicle occupied by that person*.  The identity of the operator and the owner of the vehicle must be unknown.  The accident must be reported within 24 hours to the proper authorities. **We** must be notified within 30 days.

(UF Nos. 4, 5) (bold emphasis added; italicized emphasis added)).

This policy language is consistent with California Insurance Code, section 11580.2(b)(1), which states that, in order for there to be coverage for a hit-and-run accident, "[t]he bodily injury [must] ha[ve] arisen out of *physical contact* of the [hit-and-run] automobile with the insured or with an automobile that the insured is occupying."  Cal. Ins. C. §11580.2(b)(1) (emphasis added).

> 2.   <u>Plaintiffs' Policy voids coverage if the insured makes a material misrepresentation.</u>

The Policy also voids coverage where an insured misrepresents or conceals a material fact.  In relevant part, a Policy endorsement provides, "This policy will not apply to any claim in which an insured person has concealed or misrepresented a material fact or circumstance."  (UF No. 6).

## C.   Allstate Investigates Plaintiffs' UM Claim

Mr. Rivera initially represented to Allstate that the accident was caused because there was a large unidentified truck that went out of control and lost its tire, which Plaintiffs struck.  (UF No. 14).  He further claimed that "other people hit the tire as well and were injured."  (UF No. 15).  Based on Mr. Rivera's initial recitation of events, Allstate's preliminary liability analysis was that UM coverage potentially applied because the unknown truck created the hazard by spinning out of control and losing its tire at the time of the accident.  (UF No. 16).

Less than a month later, on March 4, 2014, Allstate obtained and reviewed a copy of the Police Report.  (UF No. 17).  Under the heading "Type of Collision," the

-5-

Case No. 5:20-cv-01860 DOC (KKx)
DEFENDANT ALLSTATE INDEMNITY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

1  Police Report stated that Plaintiffs "hit object."[2]  (UF No. 18).  The Police Report

2  stated under "Roadway Conditions" that there was an "obstruction on roadway."

3  (UF No. 19)  The diagram in the Police Report did not show any other vehicle as

4  being involved in the accident.  (UF No. 20).  According to the Police Report, Mr.

5  Rivera told the officer that he was paying attention to the road but "out of nowhere a

6  full size tire was in the middle of his lane.  No other vehicles were involved."  (UF

7  No. 21).  Mrs. Rivera similarly told the reporting officer that Mr. Rivera "was

8  driving them home when they saw a tire in the lane.  It was dark and the tire came

9  from out of the darkness."  (UF No. 22).  The Police Report concluded that Mr.

10  Rivera "caused the collision while driving V-1 at an unsafe speed, in violation of

11  CVC section 22350."  (UF No. 23).  The Police Report identified just one

12  eyewitness to the accident, Kevin Sian.  (UF No. 24).  According to the report, Mr.

13  Sian also indicated that "[t]here were no other vehicles around V-1."  (UF No. 25).

14      In connection with its investigation of Plaintiffs' claim, Allstate also hired a

15  private investigator to independently interview Mr. Sian.  (UF No. 26).  The

16  investigator obtained an in-person recorded statement from Mr. Sian on July 1,

17  2014.  (UF No. 27).  During the interview, Mr. Sian told the investigator that he did

18  not recall seeing any vehicles other than Plaintiffs' truck on the freeway at the time

19  of Plaintiffs' accident and hat Mr. Rivera told him that he had hit a tire that was

20  lying in the road.  (UF Nos. 28, 29).  According to the investigator, Mr. Sian was

21  articulate and came off credible.  (UF No. 30).

22      In short, Allstate's investigation did not yield any evidence corroborating Mr.

23  Rivera's initial story that an unidentified truck was involved in the accident.  Rather,

24

25  ───────────────

26  [2]  Allstate includes the following facts not to prove the truth of the matters asserted
    therein, but merely to show their effect on Allstate.  *See United States v. Payne*,

27  944 F.2d 1458, 1472 (9th Cir. 1991) (finding out-of-court statement was properly
    treated as non-hearsay because it was not introduced to prove the truth of the

28  matter asserted, but rather, "was introduced to show the effect on the listener.")

SMRH:4822-5147-7195.2                                DEFENDANT ALLSTATE INDEMNITY COMPANY'S
                                                     MOTION FOR SUMMARY JUDGMENT

all of the evidence suggested that, in fact, the tire was lying dormant in the middle of Plaintiffs' lane as Plaintiffs approached it, and so the loss was not covered under the plain terms of the Policy's UM provision.

### D.   Plaintiffs Fail to Return Requested Medical and Wage Authorization Forms

Allstate sent each of Mr. Rivera, Mrs. Rivera, and Joanna medical and wage authorization forms on March 29, 2014.  (UF Nos. 55-57).  Plaintiffs never returned Allstate's requested medical or wage authorization forms.  (UF Nos. 58-60).

### E.   Allstate Denies Plaintiffs' UM Claim For the First Time

Allstate advised Plaintiffs on August 21, 2014 that "[o]ur investigation has, unfortunately, determined that the driver of your client's vehicle came upon a tire that was lying in the middle of the road and subsequently struck that tire."  (UF No. 32).  Allstate further advised that:

> There is no evidence to support that the tire was set in motion as Mr. Rivera asserts.  The evidence is that it was stationary and motionless in the lane of travel until it was hit by Mr. Rivera's truck.  Unfortunately, due to this conclusion your clients would not be entitled to uninsured motorist bodily injury benefits for this loss.

(UF No. 33).

In addition, Allstate's denial letter advised that "the statute of limitations for Uninsured Motorist Claims expires two years for [sic] the date of loss unless we have reached a[] settlement or you have requested arbitration in writing prior to that date."  (UF No. 34).

### F.   Plaintiffs Revive Their UM Claim

From the time of Allstate's unequivocal denial of the UM claim on August 21, 2014, there was radio silence from Plaintiffs until their counsel sent a letter to Allstate on February 5, 2016 requesting UM coverage and demanding arbitration under the Policy.  (UF No. 35).

### G.   Allstate Continues to Investigate the Matter

Despite the lack of any evidence suggesting the accident was a covered UM loss, Allstate agreed to further investigate the matter and promptly assigned the matter to the law firm Pollack Vida.  (UF No. 36).  On August 26, 2016, Allstate's counsel advised Plaintiffs' counsel that "based on our review of this matter, it appears that further investigation is necessary for us to fully evaluate this matter."  (UF No. 37).

#### 1.   Allstate Conducts Written Discovery

Allstate conducted written discovery in connection with the parties' underlying UM arbitration.  Plaintiffs each provided verified responses to Allstate's special interrogatories and form interrogatories confirming that the accident occurred "due to a full size tire left in the middle of the lane" in which they were traveling, and that Mr. Rivera "ran over the tire and lost control of his truck."  (UF Nos. 38-43).

#### 2.   Allstate Takes Plaintiffs' Examinations Under Oath

Allstate's counsel also took Mr. Rivera's, Mrs. Rivera's, and Joanna's EUOs on November 7 and 8, 2016.  (UF No. 44).  Plaintiffs each testified unequivocally at their EUOs that the tire was lying flat in their lane as they approached it.  More specifically, Mr. Rivera testified that he first saw the tire when it was about 25 feet in front of his vehicle.  (UF No. 45).  He confirmed that the tire was lying stationary on its side, and did not know where it came from.  (UF Nos. 46, 47).  Further, the nearest vehicle ahead of him was at least a quarter of a mile away.  (UF No. 48).

Mrs. Rivera similarly confirmed at her EUO that the tire was stationary.  (UF No. 49).  She did not see where the tire came from.  (UF No. 50).

Mr. and Mrs. Rivera's daughter, Joanna, who was fourteen years old at the time of the accident, was asleep in the back of Plaintiffs' vehicle at the time of the accident, and so did not see what happened.  (UF No. 51).  Joanna's father, Mr. Rivera, told her after the accident that the tire was stationary.  (UF No. 52).

-8-

Case No. 5:20-cv-01860 DOC (KKx)
DEFENDANT ALLSTATE INDEMNITY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

Plaintiffs' EUOs and discovery responses were consistent with the Police Report and independent statement from Mr. Sian that had led to Allstate's initial denial of the claim in 2014: the tire was lying motionless in Plaintiffs' lane immediately preceding the accident.

### H.     Allstate Again Denies the Claim

Based on Plaintiffs' clear testimony at their EUOs that the tire was motionless, Allstate denied their claim for UM benefits for the second time on January 11, 2017.  (UF No. 54).  Plaintiffs then waited over 28 months before filing their complaint against Allstate in this lawsuit on June 3, 2020.  Plaintiffs request declaratory relief that they are owed Policy benefits.

### III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF ALLSTATE ON PLAINTIFFS' COMPLAINT

### A.     Plaintiffs Are Not Entitled to UM Benefits Under the Policy Because There Was No Physical Contact With an Uninsured Auto

Under California law, "the burden is on the insured initially to prove that an event is a claim within the scope of the basic coverage." *Travelers Cas. & Sur. Co. v. Superior Court*, 63 Cal. App. 4th 1440, 1454 (1998).  Plaintiffs cannot do so here. Their Policy, in line with California law, requires that there be physical contact with an uninsured automobile to trigger UM coverage.  (UF No. 5); *see also* Cal. Ins. Code § 11580.2(b)(1).  There is no evidence that Plaintiffs' accident involved *any* other vehicle.  On the contrary, all of the evidence – including Plaintiffs' EUO testimony and verified discovery responses – confirm that the tire was motionless as they approached and hit it.  And, it is now undisputed that the tire was in fact motionless immediately preceding the accident (UF No. 53) and that there was no physical contact between Plaintiffs and any uninsured vehicle during the accident. (UF No. 31); *see also* ECF No. 28 ("Neither party is disputing that a tire on a rim was at rest in the lane.").  As a matter of law, the loss was not covered under the

1   Policy's UM provision.  Allstate thus appropriately denied the claim, defeating

2   Plaintiffs' request for declaratory relief.

3           1.      <u>To Trigger UM Coverage, the Accident Must Involve Physical</u>

4                   <u>Contact With an Uninsured Automobile.</u>

5         Both the Allstate policy and the uninsured motorist statute require, as a

6   condition of UM coverage, that there have been physical contact with an uninsured

7   vehicle.   (Ex. 6 at P000015) (requiring "physical contact with the insured person or

8   with a vehicle occupied by that person"); Ins. Code § 1 1580.2(b)(l) (requiring "the

9   bodily injury has arisen out of physical contact" with the uninsured vehicle); *State*

10  *Farm Mutual Auto Ins. Co. v. Yang*, 35 Cal. App. 4th 563, 568 (1995).

11        "Physical contact" is defined as a direct application of force.  *Barnes v.*

12  *Nationwide Mutual Ins. Co.*, 186 Cal. App. 3d 541, 543 (1986).  There is no "direct

13  application of force" if the insured simply hits an object that is lying at rest in the

14  road.  (*Id*.)  *Barnes* is instructive.  There, the insured collided with a box of chairs

15  that was sitting on the freeway.  *Barnes*, 186 Cal. App. 3d at 542.  The court found

16  that there was no "physical contact" within the meaning of the plaintiff's uninsured

17  motorist coverage because there "was not a direct application of force from the

18  uninsured vehicle.  The box did not fall from the uninsured vehicle onto Ms. Barnes'

19  car; it was lying in the road when Ms. Barnes hit it ..." *Id.* at 543-44.  Summary

20  judgment in favor of the insurer was thus proper.  *Id.* at 544; *see also Orpustan v.*

21  *State Farm Mut. Auto. Ins. Co.*, 7 Cal. 3d 988, 993-94 (1972) ("[t]he right to recover

22  for the negligence of an unknown motorist is determined, under the plain terms of

23  the statute, by whether or not the 'bodily injury' was caused by 'physical contact.'

24  The statute makes proof of 'physical contact' a condition precedent in every case for

25  the recovery of damages caused by an unknown vehicle.  There are no exceptions.").

26  Thus, to fulfill the "physical contact" requirement, the object, even if it fell from an

27  unknown vehicle, must still be in motion at the time of contact.

28

1      The insured has the burden of showing that the claim falls within the insuring

2  clause.  *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998).  Plaintiffs

3  did not and cannot do so.

4           2.    <u>Plaintiffs Did Not Come Into Physical Contact With an</u>

5                    <u>Uninsured Auto – Or With Any Moving Object</u>

6      Although Mr. Rivera initially claimed the tire came off of a truck that lost

7  control, that version of events is contradicted by not only the Police Report and

8  third-party witness statement, but his own EOU and verified discovery responses, as

9  well as Mrs. Rivera's and Joanna's EOU testimony and discovery responses -- all of

10  which confirm the tire was stationary as Plaintiffs approached and struck it.[3]

11                 a.    Police Report

12      The diagram in the Police Report does not show any other vehicle as being

13  involved in the accident.  (UF No. 20).  According to the Police Report, Mr. Rivera

14  told the reporting officer that he was paying attention to the road but "***out of***

15  ***nowhere a full size tire was in the middle of his lane.  No other vehicles were***

16  ***involved***."  (UF No. 21).  Mrs. Rivera similarly told the reporting officer that Mr.

17  Rivera "was driving them home when they saw a tire in the lane.  It was dark and

18  ***the tire came from out of the darkness***."  (UF No. 22).  In fact, the Police Report

19  concluded that "[Mr. Rivera] caused the collision while driving V-1 at an unsafe

20  speed, in violation of CVC section 22350."  (UF No. 23).

21                 b.    Independent Witness Statement

22      According to the Police Report, Mr. Sian, the only identified eyewitness to

23  the accident, also indicated that "[t]here were no other vehicles around V-1."  (UF

24  No. 25).  Allstate retained a private investigation firm, Costello & Associates, to

25  interview Mr. Sian.  (UF No. 26).  Mr. Sian similarly relayed to Costello during his

26

27  [3]   It is also implausible that a truck which "lost control" and lost a tire did not itself

28  crash at or near the scene of Plaintiffs' accident such that the reporting officer would have been notified and included it as part of his incident report.

in-person recorded statement that he did not recall seeing any vehicles other than Plaintiffs' truck on the freeway at the time of the accident.  (UF Nos. 27, 28).   Mr. Sian also confirmed that Mr. Rivera told him, immediately after the accident, that Mr. Rivera had hit a tire that was lying in the road.[4]  (UF No. 29).

c.   Plaintiffs' Discovery Responses

Each of the Plaintiffs provided <u>verified</u> discovery responses that claimed that "This incident occurred due to a full size tire ***left in the middle of the lane***" in which they were traveling.  (UF 38-43).

d.   Examinations Under Oath

At his EUO, Mr. Rivera confirmed that: (1) he first saw the tire when it was about 25 feet in front of his vehicle (UF No. 45); (2) the tire was lying on its side (UF No. 46); (3) he did not know where it came from (UF No. 47); and (4) the nearest vehicle ahead of him was a quarter of a mile away (UF No. 48).  Mrs. Rivera similarly admitted that the tire was stationary and that she did not see where it came from.  (UF Nos. 49, 50).  Joanna was asleep in the back of Plaintiffs' vehicle at the time of the accident, but her father, Mr. Rivera, later told her that the tire was stationary.  (UF Nos. 51, 52).

3.   <u>The Accident Was Not a Covered UM Loss Because There Was No Physical Contact With An Uninsured Auto</u>

The Police Report, Mr. Sian's independent statement to Allstate's investigator, Plaintiffs' sworn testimony, and their written discovery responses each individually – and certainly when taken together – demonstrated that the tire was lying immobile on the road when Plaintiffs collided with it.  Plaintiffs did not provide any information to Allstate to suggest otherwise, other than Mr. Rivera's

---

[4]   Again, although Plaintiffs have now confirmed that the tire was in fact stationary when they struck it (*see* UF Nos. 31, 53), Allstate includes these facts to show the information that was before Allstate when it evaluated Plaintiffs' claim for UM benefits.

-12-

Case No. 5:20-cv-01860 DOC (KKx)<br>DEFENDANT ALLSTATE INDEMNITY COMPANY'S<br>MOTION FOR SUMMARY JUDGMENT

initial (and later recanted) statement that there was an unknown truck involved. There simply was no question of the tire being in motion, or of any other vehicle being involved in the accident.  (*See* UF Nos. 31, 53).  Indeed, Plaintiffs agree. (ECF No. 28 at p. 4).  Regardless of the tire's source, the "physical contact" requirement cannot be met.[5]  Therefore, the accident would not qualify as a "hit-and-run" motor vehicle accident, which requires that bodily injury be caused "by physical contact with the insured person or with a vehicle occupied by that person." (UF No. 5).  UM coverage thus does not apply to this loss, and Allstate's conclusion to that effect was consistent with the policy language, the California Insurance Code, and California case law.  *Barnes*, 186 Cal. App. 3d at 541.

**B.    Plaintiffs' Material Misrepresentations Bar Their Recovery**

1.    Proof of a Knowing Material Misrepresentation is a Complete Defense to Liability

Under California law, an insured's misrepresentation or concealment of a material fact during the presentation of an insurance claim entitles an insurer to deny the claim.  *Cummings v. Farmers Ins. Exch.*, 202 Cal. App. 3d 1407, 1417 (1988). Once an insured has misrepresented or concealed a material fact, sufficient grounds exist to deny an insurance claim – even if the insured eventually comes forward with the truth.  *Onyon v. Truck Ins. Exch.*, 859 F. Supp. 1338, 1342 (W.D. Wash. 1994) (explaining it would be "absurd" to contend that "a claimant could make a false statement to his insure[r], sit back and see how the investigation was proceeding, and then recant with impunity if his lie were in danger of being exposed") (internal citations omitted).  The outcome makes sense; Plaintiffs cannot recover unless they prove there are policy benefits due.  Because coverage to an insured who knowingly misrepresents a material fact is voided, a knowing misrepresentation by Plaintiffs

---

[5]  In fact, Mr. Rivera is adamant that he does not know where the tire came from and that any speculation by him about its source would be "without any basis." (ECF No. 7, ¶ 3).

1  means that no policy benefits were due.  Plaintiffs' Policy likewise voids coverage

2  on "any claim in which an insured person has concealed or misrepresented a

3  material fact or circumstance."  (UF No. 6).

4          A misrepresentation or concealment is material as a matter of law if it

5  "concerns a subject reasonably relevant" to the claim investigation, and "if a

6  reasonable insurer would attach importance to the fact misrepresented." *Cummings*,

7  202 Cal. App. 3d at 1417 (italics omitted); *see also Fine v. Bellefonte Underwriters*

8  *Ins. Co.*, 725 F. 2d 179, 183 (2nd Cir. 1984).  Materiality may be decided as a matter

9  of law if reasonable minds could not differ as to the materiality of the

10  misrepresentation.  *Cummings*, 202 Cal. App. 3d at 1417; *Long v. Ins. Co. of N. Am.*,

11  670 F.2d 930, 934 (10th Cir. 1982).  Indeed, in the context of a motion for summary

12  judgment, courts routinely grant complete summary judgment where it is undisputed

13  that a plaintiff misrepresented a material fact.  *See, e.g.*, *Cummings*, 202 Cal. App.

14  3d at 1417-19 (summary judgment affirmed); *Hodjat v. State Farm Mut. Auto. Ins.*

15  *Co.*, 211 Cal. App. 4th 1, 9 (2012) (summary judgment affirmed); *Morris v. Allstate*

16  *Ins. Co.*, 16 F. Supp. 3d 1095, 1100 (C.D. Cal. 2014) (summary judgment granted);

17  *Ram v. Infinity Select Ins.*, 807 F. Supp. 2d 843, 853 (N.D. Cal. 2011) (same).

18          The Court should do so here.

19          2.    Plaintiffs Knowingly Made Material Misrepresentations

20          Here, in his initial statement to Allstate, Mr. Rivera represented that a large

21  truck went out of control and lost its tire.  (UF No. 14).  He also claimed that other

22  drivers hit the tire.  (UF No. 15).  As his own testimony under oath and verified

23  discovery responses, as well as the Police Report and independent witness statement

24  make clear, these representations were untrue.  The dormant tire was simply a road

25  hazard, which falls outside the scope of UM coverage.  *Barnes*, 186 Cal. App. 3d at

26  543; Cal. Ins. Code § 11580.2(b)(1).

27          There can be no doubt as to the materiality of Mr. Rivera's contention about

28  the unknown truck's involvement in the accident.  First, Plaintiffs were not eligible

for UM bodily injury coverage absent physical contact with another vehicle. Second, attributing the tire to a moving truck could have brought the loss within the scope of the Policy's UM coverage where it otherwise would be outside the scope of coverage.  Indeed, it was based on Mr. Rivera's initial statement taken at face value that Allstate initially concluded UM coverage might apply.  (UF No. 16).  Thus, the misrepresentation that a mystery (but in reality non-existent) moving truck lost the tire that Mr. Rivera hit was material because it concerned "a subject reasonably relevant" to the claim investigation – namely, whether Plaintiffs were entitled to any policy benefits.  *Cummings*, 202 Cal. App. 3d at 1417.

Mr. Rivera's misrepresentation was also no doubt knowing.  Mr. Rivera knew there was no truck at the time of the accident, because that is exactly what he told the police at the scene of the accident, reiterated in his discovery responses, and is consistent with what his wife and daughter testified under oath.[6]  It is immaterial whether Mr. Rivera initially lied to Allstate to qualify for uninsured motorist bodily injury benefits, to avoid embarrassment, or for some other reason.  *Cummings*, 202 Cal. App. 3d at 1418 (an insured's "motive in misrepresenting material facts to the insurer is simply irrelevant in determining whether a fraud and concealment provision provides a defense to the insured's claim.")  For whatever reason, Mr. Rivera lied.  These acknowledged and withdrawn falsehoods mean that Plaintiffs' claim is barred under the Policy and Allstate is entitled to summary judgment.

**C.    Plaintiffs' Failure to Return Allstate's Requested Medical and Wage Authorization Forms Precludes Recovery of Policy Benefits**

Insurance Code § 11580.2(o) requires an insured to provide medical and wage

---

[6]   It is also consistent with Mr. Rivera's admissions in the instant action that there was no physical contact between Plaintiffs and any uninsured vehicle in connection with the February 7, 2014 accident (UF No. 31) and that the tire Plaintiffs struck during their accident was motionless immediately preceding the accident (UF No. 53).

SMRH:4822-5147-7195.2                                                      DEFENDANT ALLSTATE INDEMNITY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

1 authorizations, and stays all proceedings, and entitlement to policy benefits, until 30

2 days after that requirement is met.  Cal. Ins. Code, § 11580.2(o).  Consequently,

3 Plaintiffs never became entitled to *any* policy benefits because of their failure to

4 ever return the wage authorization.  (UF Nos. 58-60).  *Myers v. Allstate*, 109 F.

5 Supp. 3d 1331, 1336-1337 (C.D. Cal. 2015) ("[The insured's] failure to provide the

6 requested medical authorization negated her entitlement to the *arbitration*, let alone

7 to any benefits due to her following the arbitration award.") (emphasis in original)).

8 This is a further independent reason Plaintiffs' claim fails as a matter of law.

9 **IV.    CONCLUSION**

10       For the foregoing reasons, Allstate requests that this Court grant summary

11 judgment in its favor of Allstate.[7]

12 Dated:  September 17, 2021

13                          SHEPPARD, MULLIN, RICHTER & HAMPTON
14                          LLP

15

16       By   _____

17                          PETER H. KLEE
18                          MADALYN A. MACARR
                            Attorneys for Defendant Allstate Indemnity
19                          Company

20  _____

21 [7] Even if Plaintiffs renege on their written agreement to voluntarily dismiss their
   admittedly time-barred bad faith claim, if the Court grants summary judgment on
22 the declaratory relief claim, their bad faith claim likewise fails.  *Waller v. Truck*
23 *Ins. Exch.*, 11 Cal. 4th 1, 35-37 (1995) ("[B]ecause a contractual obligation is the
   underpinning of a bad faith claim, such a claim cannot be maintained unless
24 policy benefits are due under the contract."); *Love v. Fire Ins. Exchange*, 221
   Cal. App. 3d 1136, 1153 ("[A] bad faith claim cannot be maintained unless
25 policy benefits are due."); *State Farm Mut. Auto. Ins. Co. v. Davis*, 7 F.3d 180,
26 184 (9th Cir. 1993) (affirming grant of summary judgment in favor of insurer,
   reasoning that "because coverage does not exist for the shooting, State Farm is
27 not liable for breach of contract nor breach of the covenant of good faith and fair
28 dealing").

-16-

SMRH:4822-5147-7195.2